UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JOHN DIDONNA,

                          Plaintiff,

          -against-                          <u>MEMORANDUM & ORDER</u>
                                             12-CV-1487(JS)(ARL)

VILLAGE FARMS IGA, LLC,

                          Defendant.
----------------------------------------x
APPEARANCES
For Plaintiff:        Saul D. Zabell, Esq.
                      Zabell & Associates, P.C.
                      4875 Sunrise Highway, Suite 300
                      Bohemia, NY 11716

For Defendant:        Michael Anthony Miranda, Esq.
                      Brian S. Condon, Esq.
                      Maurizio Savoiardo, Esq.
                      Miranda Sambursky Slone Sklarin Verveniotis
                           LLP
                      240 Mineola Boulevard
                      Mineola, NY 11501

SEYBERT, District Judge:

          Currently pending before the Court is defendant Village

Farms IGA, LLC's ("Defendant") motion for summary judgment.  For

the following reasons, Defendant's motion is GRANTED IN PART and

DENIED IN PART.

<u>BACKGROUND</u>[1]

Defendant is a corporation that operates small supermarkets at several locations in New York.[2] In September 2011, Defendant submitted job postings on Craigslist for managerial positions. (Def.'s 56.1 Stmt., Docket Entry 41-53, ¶¶ 3-4.) On September 18, 2011, Plaintiff John DiDonna ("Plaintiff") sought such a managerial position at Defendant's Shelter Island location through an e-mail application. (Def.'s 56.1 Stmt. ¶ 5.)

In his resume, Plaintiff represented that he had prior managerial experience at Lombardi's Market and various other delis, that he had achieved the rank of Sergeant in the United States Marines, and that he graduated from Nassau Community College with a degree in Business Administration. (Def.'s 56.1 Stmt. ¶¶ 6-8, 12-13.) Plaintiff admits that he did not work at Lombardi's market during all times represented in his resume, that he did not graduate from Nassau Community College, and that he did not achieve the rank of Sergeant. (Def.'s 56.1 Stmt.

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statement ("56.1 Stmt.") and Counterstatement ("56.1 Counterstmt.") and the evidence in support. Where relevant, the Court has noted specific factual disputes. Given the large number of disputes, however, such issues will be more fully addressed later in this Memorandum and Order.

[2] The parties' 56.1 Statements do not directly address the nature of Defendant's business, but the Court gathers that Defendant operates at least two locations.

¶¶ 18, 20, 22; Pl.'s 56.1 Counterstmt., Docket Entry 42-2, ¶¶ 18, 20, 22.)

Upon receiving his resume, Village Farms owner Diane Peronace called Plaintiff in for an interview. (Def.'s 56.1 Stmt. ¶ 9.) Mrs. Peronace subsequently interviewed Plaintiff on two separate occasions. During the second interview, she informed Plaintiff that the deli department, presumably referring to the Massapequa Park location, was a "problem child." (Def.'s 56.1 Stmt. ¶ 29.) Plaintiff understood that Mrs. Peronace wanted Plaintiff to "go in the deli and try to straighten it out." (Def.'s 56.1 Stmt. ¶ 30 (internal quotation marks and citations omitted).) She also informed Plaintiff that the deli clerks would be his subordinates and that it was his responsibility to make sure that they did their jobs correctly. (Def.'s 56.1 Stmt. ¶ 31.)

At the conclusion of the second interview, Mrs. Peronace hired Plaintiff as a Deli Manager and informed him of the dress code for managers. (Def.'s 56.1 Stmt. ¶¶ 32-34.) Plaintiff asserts that, even though he was hired as a Deli Manager and began working at the Massapequa Park location, his primary duty was as a "counter person" and he usually wore the same attire as other non-managerial employees. (Pl.'s 56.1 Counterstmt. ¶¶ 32-33.) In fact, according to Plaintiff, upon being hired, ninety to ninety-five percent of his time was

devoted to performing non-managerial tasks and managerial tasks such as advertising specials were primarily handled by Defendant's floating manager Scott "Skip" Decicco ("Decicco"). (Pl.'s 56.1 Counterstmt. ¶¶ 27, 29, 31.) Plaintiff further asserts that, to the extent he did perform managerial functions, they were at the direction of Decicco and Store Manager Armando Cortes ("Cortes"). (Pl.'s 56.1 Counterstmt. ¶ 27.) Plaintiff maintains that he had no independent discretion or authority. (Pl.'s 56.1 Counterstmt. ¶ 27.)

Plaintiff began working for Defendant on October 9, 2011. (Def.'s 56.1 Stmt. ¶ 38.) For the first two days of his employment, Plaintiff worked "undercover" in order to assess the deli department. (Def.'s 56.1 Stmt. ¶ 34.) Defendant asserts that, during Plaintiff's employment, Plaintiff recommended a dress code that Defendant then implemented. (Def.'s 56.1 Stmt. ¶¶ 45-46.) Plaintiff maintains that he was merely asked whether a dress code would be a good idea, to which he responded in the affirmative. (Pl.'s 56.1 Counterstmt. ¶ 45.) Defendant also maintains that Plaintiff prepared the weekly work schedule for deli clerks. (Def.'s 56.1 Stmt. ¶ 48.) Plaintiff disputes that he made the schedule and maintains that he merely collected information from employees and that Cortes ultimately made the schedule. (Pl.'s 56.1 Counterstmt. ¶ 48.)

The parties further dispute the particular tasks that Plaintiff performed, such as ordering inventory, and Plaintiff generally avers that managerial tasks were performed either by Decicco or Cortes or by Plaintiff at their direction. (See Def.'s 56.1 Stmt. ¶¶ 50-57, 59-64; Pl.'s 56.1 Counterstmt. ¶¶ 50-57, 59-64.) Plaintiff admits that he disciplined deli employees, but asserts that he did so only when told to do so by Cortes. (Pl.'s 56.1 Counterstmt. ¶¶ 65-67.) By way of further example, Defendant maintains that Plaintiff exercised his authority to hire employees when he hired deli clerk Kathleen McGowan. (Def.'s 56.1 Stmt. ¶ 58.) Plaintiff counters that the decision to hire Ms. McGowan was made by Decicco. (Pl.'s 56.1 Counterstmt. ¶ 58.)

On January 25, 2012, less than four months after Plaintiff began working for Defendant, his employment was terminated. (Def.'s 56.1 Stmt. ¶¶ 38-39.) On that day, deli clerk Chelsea Amato went outside for a cigarette break in violation of the company's no-smoking break policy. (Def.'s 56.1 Stmt. ¶¶ 87-88.) While throwing out the garbage, Ms. Amato injured her leg. (Def.'s 56.1 Stmt. ¶ 90.) Defendant maintains that Plaintiff improperly gave Ms. Amato permission to take a cigarette break and that he was terminated for his inability to manage staff and oversee the daily functions of running a deli department. (Def.'s 56.1 Stmt. ¶¶ 88, 91.) Although Plaintiff

admits to having been reprimanded on several occasions (Pl.'s 56.1 Counterstmt. ¶ 76), he denies giving Ms. Amato permission to take a smoking break and believes that his termination was due to his complaints about overtime compensation and benefits (Pl.'s 56.1 Counterstmt. ¶¶ 88, 91).

According to Defendant, managers become eligible for health insurance after six months of employment. (Def.'s 56.1 Stmt. ¶ 37.) Plaintiff avers that Defendant told him he would be eligible for health insurance after three months of employment. (Pl.'s 56.1 Counterstmt. ¶ 37.) Plaintiff further asserts that, after he complained, he was informed that he would be eligible for benefits after one year. (Pl.'s 56.1 Counterstmt. ¶ 37.)

Plaintiff now alleges that Defendant violated the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 et seq. ("FLSA"); New York State Labor Law ("NYLL"); and Employee Income Retirement Security Act of 1974, § 510 ("ERISA").

<u>DISCUSSION</u>

Defendant has moved for summary judgment. The Court will first address the applicable legal standard before turning to Defendant's arguments more specifically.

I. <u>Legal Standard</u>

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment

as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d

Cir. 2000), superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

II. Plaintiff's Claim for Overtime Wages

Plaintiff has alleged that Defendant violated the FLSA and NYLL by failing to properly pay him overtime wages.[3] Defendant seeks summary judgment on this claim, arguing that Plaintiff is an exempt employee under the relevant statutes and regulations of the Secretary of Labor. The Court finds that whether Plaintiff was an exempt employee presents a question of fact that cannot be decided at summary judgment.

"The FLSA sets out minimum requirements for wage and overtime payments and prohibits employment for more than a specified number of hours per week without proper overtime compensation." Callari v. Blackman Plumbing Supply, Inc., --- F. Supp. 2d ----, 2013 WL 6795911, at *11 (E.D.N.Y. Dec. 19, 2013) (citing 29 U.S.C. §§ 201-13)). Thus, hours worked in excess of forty hours per week must be compensated at a rate of at least time and a half. 29 U.S.C. § 207(a)(1). An employee working in "a bona fide executive, administrative, or professional capacity," however, is exempt from the overtime compensation

---

[3] Both parties have provided a single analysis of the FLSA and NYLL claims. The Court will do the same in this Memorandum and Order. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 78 (2d Cir. 2003) (noting that the claims are essentially analogous under NYLL and the FLSA).

requirement. Id. at 213(a)(1). Although the FLSA does not define these terms specifically, the regulations promulgated by the Secretary of Labor provide that the "executive exemption" applies to employees who are:

> (1) compensated on a salary basis at a rate of not less than $455 per week[4] . . .; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a)(1)-(4); accord Callari, 2013 WL 6795911, at *12.

> Furthermore, "management" includes, inter alia:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or

---

[4] Although New York law sets a higher minimum, there is no dispute that Plaintiff's salary met either threshold. See Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 521 n.12 (S.D.N.Y. 2013); see also Def.'s Br. at 1 n.1-2.

> tools to be used or merchandise to be bought,
> stocked and sold; controlling the flow and
> distribution of materials or merchandise and
> supplies; providing for the safety and
> security of the employees or the property;
> planning and controlling the budget; and
> monitoring or implementing legal compliance
> measures.

29 C.F.R. § 541.102; accord Callari, 2013 WL 6795911, at *12.

"'Because the FLSA is a remedial statute, its exemptions are construed narrowly against the employer.'" Martinez, 930 F. Supp. 2d at 520 (quoting Kahn v. Superior Chicken & Ribs, Inc., 331 F. Supp. 2d 115, 117 (E.D.N.Y. 2004)). Ultimately, "[w]hether an exemption applies to a particular employee is a mixed question of law and fact." Id. How the employee "spent their working time" is a question of fact whereas "whether their particular activities excluded them from . . . overtime benefits" is a question of law. Id. (internal quotation marks and citations omitted).

It is undisputed that Plaintiff was a salaried employee who made $1,000 per week. (See Def.'s 56.1 Stmt. ¶ 118; Pl.'s Dep., Docket Entry 41-43, at 73.) While there may have been a salary differential between Plaintiff's pay and that of exempt employees, little else is undisputed. See Clougher v. Home Depot U.S.A., Inc., No. 06-CV-5474, 2010 WL 4568984, at *4 (E.D.N.Y. Nov. 3, 2010) ("In light of the totality of the facts and circumstances, this Court concluded that the compensation

differential alone was not sufficient to find as a matter of law that Plaintiff is a managerial employee.").

The parties proffer differing versions of Plaintiffs' duties, activities, and responsibilities and contest whether Plaintiff's primary duty was management. "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In making this determination, relevant factors include: (1) "the relative importance of the exempt duties as compared with other types of duties"; (2) "the amount of time spent performing exempt work"; (3) "the employee's relative freedom from direct supervision"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id.

Here, we know that Plaintiff was hired as a manager and that he at least held the title of deli manager. Moreover, Plaintiff does not dispute that he worked "undercover" for one to two days and "assessed" the deli department. (Pl.'s Dep. at 93, 133.) In fact, Plaintiff does admit to having some level of authority. (See, e.g., Pl.'s Dep. at 99 (either Plaintiff or other managers had to authorize putting a chicken out); id. at 111 (Plaintiff oversaw others in the deli department with managerial titles); id. at 187 (Plaintiff was responsible for certain tasks in the morning).)

On the other hand, Plaintiff maintains that he spent ninety to ninety-five percent of his time doing non-managerial work. Though this is not dispositive, it is telling. <u>See</u> <u>Callari</u>, 2013 WL 6795911, at *13 ("With respect to time spent performing exempt work, while 'employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement[,] [t]ime alone [ ] is not the sole test' and 'exempt employees need not spend more than 50 percent of their time performing exempt work.'" (quoting 29 C.F.R. § 541.700(b))).

Additionally, the parties contest a significant number of tasks, activities, and duties allegedly performed by Plaintiff. For example, they dispute whether Plaintiff had the authority to discipline employees or did so only at the direction of others. Certainly, the evidence in the record clearly indicates that Plaintiff had at least some involvement in the discipline of employees. For example, Plaintiff signed various disciplinary notices for disciplinary actions taken against deli clerks. (<u>See</u> Savoiardo Decl., Docket Entry 41, Exs. M, N, O, P; Pl.'s Dep. at 231-33, 238, 244, 249.) Significantly, however, Cortes confirms that at least on one occasion, Plaintiff took disciplinary action against a deli clerk only after seeking, and receiving, Cortes' approval. (Cortes Dep., Docket Entry 41-45, at 84, 91.) Furthermore, Plaintiff was present at various

meetings involving disciplinary actions against employees. The capacity in which Plaintiff attended these meetings, however, is unclear. (See Pl.'s Dep. at 101, 141, 246.) The evidence suggests that Plaintiff's involvement was as a manager, but Plaintiff testified that he did not have any input in the disciplinary actions taken. (See Pl.'s Dep. at 101 ("Q: Did you ever participate in the meetings with employees of the deli department regarding their performance? A: No. Q: This was the only one? A: I didn't participate. I was dragged in there and they told me they were demoting him, so I was -- okay, you're demoting him."); see also Pl.'s Dep. at 231, 238.)

They also dispute whether Plaintiff took inventory and ordered product, whether Plaintiff had apparent responsibility for ensuring that catering orders were filled properly, and whether Plaintiff created employee schedules. While Defendant presents strong evidence in this regard (see generally, e.g., Melo Aff., Docket Entry 41-50; Amato Aff., Docket Entry 41-51; Enochs Aff., Docket Entry 41-49; McGowan Aff., Docket Entry 41-48)[5], as the Court has already noted, there is also evidence to suggest that Plaintiff undertook certain activities at the

---

[5] That Plaintiff was disciplined for his failures in properly executing such activities and alleged responsibilities is also significant. (See Pl.'s Dep. at 135 (testifying that Plaintiff was disciplined for his failure to oversee catering orders); id. at 193 (testifying that Plaintiff was disciplined for failing to order enough product).)

direction of others (<u>see</u> Pl.'s Dep. at 130, 156 (testifying that Cortes had ultimate control over employees' schedules); Cortes Dep. at 86-87 (corroborating Plaintiff's account that Cortes indeed made changes to employees' schedules and had final authority). <u>See</u> <u>Carhuapoma v. New York-Presbyterian Healthcare Sys., Inc.</u>, No. 11-CV-8670, 2013 WL 1285295, at *11 (S.D.N.Y. Mar. 29, 2013) (finding that there was a question of fact "as to whether overall Plaintiff had a level of discretion consonant with an employee whose duties are managerial" where the record showed that Plaintiff was "closely scrutinized by his supervisor" but also did not lack complete authority to make managerial judgments); <u>Indergit v. Rite Aid Corp.</u>, Nos. 08-CV-9361, 08-CV-11364, 2010 WL 1327242, at *9 (S.D.N.Y. Mar. 31, 2010) (finding that there was a factual dispute as to the plaintiff's scheduling responsibilities because plaintiff claimed only to have entered employees' availability into a computer system).

Significantly, neither party squarely addresses whether Plaintiff's managerial or non-managerial tasks were more valuable to Defendant.[6] <u>See</u> <u>Callari</u>, 2013 WL 6795911, at *20 (denying summary judgment where there were disputes regarding the proper characterization of the plaintiff's work and "the relative import

---

[6] It is also unclear whether Plaintiff undertook non-managerial tasks at his own discretion. <u>See</u> <u>Martinez</u>, 930 F. Supp. 2d at 524 (noting that exempt employees make decisions regarding performance of nonexempt duties in contrast to non-exempt employees (quoting 29 C.F.R. § 541.106(a))).

of such responsibilities" to the defendant); Carhuapoma, 2013 WL
1285295, at *11-12 (denying summary judgment where the evidence
showed both that the plaintiff's managerial duties were valuable
and that, due to staff shortages, his manual labor was also
valuable); cf. Indergit, 2010 WL 1327242, at *6 (declining to
grant summary judgment where the factual record was undeveloped
and therefore "the relative importance" of the plaintiff's exempt
duties versus non-exempt duties was unclear).

　　　　As to whether Plaintiff customarily and regularly
directed the work of two or more employees, again the parties
proffer differing versions of the facts. Several of the
employees certainly viewed Plaintiff as their supervisor and
considered part of his duties to include overall supervision of
the deli employees and management of the department, which they
affirm he did. (See Melo Aff. ¶ 11 ("In short, Mr. Didonna ran
the entire deli operation at IGA."); Amato Aff. ¶ 9 ("Mr. Didonna
ran the entire deli operation at IGA."); Enochs Aff. ¶ 8
(affirming that Plaintiff supervised employees' work and issued
work assignments to deli clerks).) At the same time, there is
evidence to suggest that Plaintiff did not have a full panoply of
discretion. (Cortes Dep. at 75-76 (Plaintiff reported to Cortes,
Gary Manino, Dave Oratski, and Robert Micello).) See Callari,
2013 WL 6795911, at *20 (denying summary judgment because
"although the Defendant attempts to point to ways in which the

Plaintiff directed the work of two or more other employees, they do not establish that he 'customarily and regularly' did so and the Plaintiff disputes that this was the case"); <u>Martinez</u>, 930 F. Supp. 2d at 527 ("A jury could credit [plaintiffs' evidence that Room Attendants could refuse their directions and were instructed by supervisors not to bother attendants] and conclude that Plaintiffs had little meaningful supervisory authority over the Room Attendants and Housemen . . . ." (internal quotation marks and citations omitted)).

Finally, as to the authority to hire or fire employees or to make meaningful recommendations, Plaintiff testified that he did not have such authority. (Pl.'s Dep. at 119.) Additional testimony further indicates that the hiring was primarily--if not solely--handled by Mr. and Mrs. Peronace and Mr. Cortes. (<u>See, e.g.</u>, Pl.'s Dep. at 123.) Defendants dispute this, however. (<u>See, e.g.</u>, D. Peronace Dep., Docket Entry 41-44, at 98.)

Accordingly, the Court finds that there are questions of fact precluding summary judgment on Plaintiff's claim for overtime compensation and Defendant's motion in this regard is DENIED.

III. <u>Plaintiff's Claim for Retaliation</u>

Defendant next moves for summary judgment on Plaintiff's claim for retaliation under the FLSA.[7] Defendant makes two main arguments: (1) that it has provided legitimate reasons for Plaintiff's termination, and (2) that Plaintiff's retaliation claim warrants dismissal based upon after acquired evidence. Because the Court agrees with Defendant that it has provided legitimate reasons for Plaintiff's termination, and that Plaintiff has not otherwise sufficiently established a retaliation claim in this respect, the Court will not address Defendant's argument regarding after acquired evidence.

The FLSA provides that it is unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Claims for retaliation under the FLSA are subject to the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). See Perez v. G & P Auto Wash Inc., 930 F. Supp.

---

[7] "The standards for stating a claim for retaliation under the FLSA and the New York Labor Law significantly overlap," and therefore the Court will provide a single analysis. Salazar v. Bowne Realty Assocs., L.L.C., 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); see also Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 238-39 (S.D.N.Y. 2013) (discussing the standard under NYLL and using the same burden-shifting analysis).

2d 423, 436 (E.D.N.Y. 2013). Thus, "[t]o establish a prima facie case of FLSA retaliation, a plaintiff must show: '(1) participation in protected activity known to defendant, like the filing of an FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" Id. (quoting Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010)). If the plaintiff is able to do so, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action." Mullins, 626 F.3d at 53 (internal quotation marks and citation omitted). If the defendant is able to show a legitimate, non-discriminatory reason, "the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Id. at 53-54 (internal quotation marks and citation omitted).

Here, Plaintiff asserts that he "engaged in statutorily protected activity, meeting the first element, by making numerous and ongoing complaints about his non-receipt of employee benefits and earned, but unpaid, overtime compensation . . . ." (Pl.'s Opp. Br., Docket Entry 42-1, at 14.) Defendant counters that, even assuming, arguendo, that Plaintiff could establish a prima

facie case, Defendant has shown a legitimate, non-discriminatory reason for Plaintiff's termination that Plaintiff cannot show was pretext. The Court agrees.

Plaintiff himself admits that he was "ineffective" as a manager and that he was disciplined on several occasions during his short tenure with Defendant. (Pl.'s Dep. at 132-33, 273.) In fact, in less than four months of employment, it is undisputed that Defendant disciplined Plaintiff regarding an incident in which a customer was spoken to rudely (Savoiardo Decl. Ex. R), failing to properly place a food order with Defendant's distributor (Savoiardo Decl. Ex. R), and failing to have a customer's catering order timely prepared (Savoiardo Decl. Ex. S). Furthermore, Defendant failed an inspection allegedly due to Plaintiff's ineptitude. (See Savoiardo Decl. Ex. U.) In addition, Defendant ultimately terminated Plaintiff's employment on the same day that deli clerk Chelsea Amato had been improperly allowed to take a smoking break, in contravention of the company's no smoking policy, and injured herself. In the Counseling Record dated January 25, 2012, under the title "specify reason for counseling session," Cortes wrote: "Negligence, going against company policy, Not doing his managerial duties properly[,] instrumental in an accident regarding his employee and not being able to manage his dept [sic] and his employees." (Savoiardo Decl. Ex. U.) The

Counseling Record goes on to detail Amato's injury, Plaintiff's involvement in Amato's injury, and how Amato's bills and claims may affect the company. (Savoiardo Decl. Ex. U.) This clearly sets forth a legitimate business reason. See Baldwin v. N. Shore Univ. Hosp., 470 F. Supp. 2d 225, 232 (E.D.N.Y. 2007) (collecting cases).

Plaintiff proffers virtually no evidence in response to Defendant's evidence. While Plaintiff asserts that he spent little time performing managerial duties, thus demonstrating that Defendant's purported termination for failure to perform his managerial duties was pretextual (Pl.'s Opp. Br. at 5-6), this does little to support Plaintiff's position. In fact, this may have been the problem. In any event, at best Plaintiff shows that he complained on a few occasions regarding overtime pay and benefits and that the owners responded that they'd "look into it." (Pl.'s Dep. at 145.) His only evidence of any purported feelings regarding Plaintiff's complaints is a statement from Gary Mannino that Plaintiff might be fired if he continued to complain. (Pl.'s Dep. at 326.) At times, Plaintiff even admits that the basis of his claim is that it is his "feeling" that he was terminated because he complained about overtime pay and benefits. (Pl.'s Dep. at 323.) This is woefully insufficient. See Jamilik v. Yale Univ., 362 F. App'x 148, 151 (2d Cir. 2009) ("As [plaintiff] has not raised a genuine issue of material fact

as to whether [defendant's] proffered explanation for the adverse employment actions are pretextual, we find that summary judgment on her retaliation claim was appropriate.").

Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim is GRANTED.

## IV.  Plaintiff's Claim Pursuant to ERISA Section 510

Finally, Defendant moves for summary judgment on Plaintiff's claim for Defendant's alleged violation of ERISA Section 510, arguing that Plaintiff cannot show that Defendant had the specific intent to engage in conduct prohibited by Section 510.  The Court agrees.

Section 510 was enacted primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."  Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (internal quotation marks and citation omitted).  It provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled [under an employee benefit plan]."  29 U.S.C. § 1140.  Like an FLSA retaliation claim, a claim brought for violation of ERISA Section 510 is subject to the McDonnell Douglas burden-shifting framework.  See Strohmeyer v. Int'l Bhd. of Painters & Allied Trades, 989 F. Supp. 455, 461

(W.D.N.Y. 1997). As such, to establish a prima facie case, a plaintiff must prove that: (1) the employee was engaged in a protected activity; (2) the employer was aware of the employee's participation in the protected activity; (3) the employer took adverse employment action against the employee; and (4) a causal connection existed between the protected activity and the adverse action. See Giordano v. Thomson, 438 F. Supp. 2d 35, 44-45 (E.D.N.Y. 2005) (citing Kreinik v. Showbran Photo, Inc., No. 02-CV-1172, 2003 WL 22339268, at *3 (S.D.N.Y. Oct. 14, 2003)). It is essential that a plaintiff "show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." Dister, 859 F.2d at 1111. "[A]n ERISA cause of action will not lie where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." Russell v. Northrop Grumman Corp., 921 F. Supp. 143, 147 (E.D.N.Y. 1996) (internal quotation marks and citation omitted).

For the same reasons articulated above with respect to Plaintiff's retaliation claim, Plaintiff's ERISA Section 510 claim also fails. See Miller v. Nat'l Ass'n of Sec. Dealers, Inc., 703 F. Supp. 2d 230, 250 (E.D.N.Y. 2010) ("Just as plaintiff has failed to adduce evidence to demonstrate that [defendant's] explanation was a pretext for age discrimination, he has not shown any reasonable basis for a conclusion that it

was a pretext for pension-based discrimination." (internal citation omitted)). In fact, Plaintiff's claim under ERISA is arguably even weaker because Plaintiff must show that Defendant was motivated, at least in part, by a specific intent to engage in prohibited activity. Plaintiff's arguments that he did not receive the employee handbook and that Gary Mannino warned Plaintiff not to complain about overtime pay and benefits do not pertain directly to whether Defendant was motivated by a specific intent. (See Pl.'s Opp. Br. at 20.)

Perhaps Plaintiff's strongest argument is that "[t]he proximity between termination to the vesting in a pension plan, along with the evidence showing that he was qualified for his position, raises an inference of ERISA discrimination as a matter of law." (Pl.'s Opp. Br. at 20 (citing Bang v. IBM Corp., 600 F. Supp. 2d 430 (E.D.N.Y. 2009).) However, there is virtually no evidence to suggest that Plaintiff was indeed qualified for the position. He readily admits that he lied about various aspects of his resume and that in four months he received several disciplinary warnings. (See generally Pl.'s 56.1 Counterstmt.) Given Plaintiff's disciplinary record, and the potential liability resultant from Amato's injury, Defendant was "left with no option but to terminate" Plaintiff. Giordano, 438 F. Supp. 2d at 45 (internal quotations marks and citation omitted) (alterations omitted); see Mayers v. Emigrant Bancorp, Inc., 796

F. Supp. 2d 434, 458 (S.D.N.Y. Apr. 22, 2011) (finding that the plaintiff failed to show pretext where the defendant hired her for failure "to live up to her managerial responsibilities").

Accordingly, Defendant's motion for summary judgment on Plaintiff's ERISA Section 510 claim is GRANTED.

[BOTTOM OF THE PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is DENIED as to summary judgment on Plaintiff's claim for overtime wages, but otherwise GRANTED.

The action is hereby REFERRED to Magistrate Judge Arlene R. Lindsay to resolve any remaining pretrial issues and to determine whether this action is ready for trial.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: June 16, 2014
       Central Islip, NY